Mildred Melde Love, Appellee, v. J. G. Love, Appellant.

MARRIAGE: Common-Law Marriage—Essentials—Agreement Followed by Consummation. If the parties are capable of contracting, and mutually agree that they are husband and wife, with present intention of becoming such, and this is followed by consummation of the marriage relation, the contract of marriage, under Section 3139, Code, 1897, is complete, and does not depend upon cohabitation for a period of time.

MARRIAGE: Common-Law Marriage—Essentials—Presumptions—Continued Cohabitation. Proof of continued cohabitation between parties who have held themselves out to the public as husband and wife, justifies the inference that they are married.

MARRIAGE: Common-Law Marriage—Sufficiency of Evidence. Evidence reviewed, and held to sustain finding of common-law marriage.

DIVORCE: Desertion—Proof. Although parties may not live together in the usual way as husband and wife, there can be desertion such as to be grounds for a divorce under Section 3174, Code, 1897.

DIVORCE: Desertion—Sufficiency of Evidence. Evidence reviewed, and held insufficient to sustain finding of court of desertion by husband.

*Appeal from Cerro Gordo District Court.—J. J. Clark, Judge.*

March 24, 1919.

Suit for divorce. Judgment and decree in favor of plaintiff. Defendant appeals.—*Reversed.*

*Senneff, Bliss, Witwer & Senneff,* for appellant.

*Blythe, Markley, Rule & Smith,* for appellee.

STEVENS, J.—I.  But two questions are presented for decision upon this appeal: (a) Were defendant and plaintiff husband and wife at the time the decree of divorce was entered; and (b) does the proof sustain her claim of statutory desertion, the only ground alleged in her petition for a divorce?

Plaintiff alleges, and relies upon, a common-law marriage.  Marriage, as defined by Section 3139 of the Code, "is a civil contract, requiring the consent of the parties capable of entering into other contracts, except as herein otherwise declared."  The marriage is denied by the defendant, and the parties have not at any time lived together, in the usual sense, as husband and wife.  Defendant, at the time of the alleged marriage, was 25 years of age, and employed by a railroad company as a switchman, and plaintiff was 23 years of age, and employed as a servant in a hotel at Sanborn, Iowa, where she claims the marriage took place in July or August, 1905.

Common-law marriages have long been recognized by the law of this state. *Blanchard v. Lambert*, 43 Iowa 228; *McFarland v. McFarland*, 51 Iowa 565.  The difficulty is not in defining common-law marriage, but arises generally from the uncertainty of proof. If the parties are capable of contracting, and mutually agree that they are husband and wife, with the present intention of becoming such, and this is followed by a consummation of the marriage relation, the contract is complete.  The consummation of the contract does not depend upon cohabitation for a period of time, but, like other contracts, it is complete when made.  Marriage, whether solemnized in the usual way or by mutual consent and agreement, is generally followed by the parties' dwelling together, and performing the duties and obligations of the

1. MARRIAGE: common-law marriage: essentials: agreement followed by consummation.

2. MARRIAGE: common-law marriage: essentials: presumptions: continued cohabitation.

marriage relation. Proof, therefore, of continued cohabitation between parties who have held themselves out to the public as husband and wife justifies the inference that the parties are married. If the marriage agreement testified to by plaintiff was admitted by the defendant, proof that the parties lived and cohabited together, or held themselves out to the public as husband and wife, would not be required. The Supreme Court of Minnesota, in *Hulett v. Carey*, 66 Minn. 327 (69 N. W. 31), referring to common-law marriage, said:

"Marriage is a civil contract *jure gentium*, to the validity of which the consent of parties able to contract is all that is required by natural or public law. If the contract is made *per verba de praesenti*, and remains without cohabitation, or if made *per verba de futuro*, and be followed by consummation, it amounts to a valid marriage, in the absence of any civil regulations to the contrary. 2 Kent, Comm., 87; 2 Greenl. Ev., Sec. 460; 1 Bishop, Mar. & Div., Secs. 218, 227, 229. The maxim of the civil law was, '*Consensus non concubitus facit matrimonium*.' The whole law on the subject is that, to render competent parties husband and wife, they must and need only agree in the present tense to be such, no time being contemplated to elapse before the assumption of the status. If cohabitation follows, it adds nothing in law, although it may be evidence of marriage. It is mutual, present consent, lawfully expressed, which makes the marriage. 1 Bishop, Mar., Div. & Sep., Secs. 239, 313, 315, 317. See, also, the leading case of *Dalrymple v. Dalrymple*, 2 Hagg, Consist. 54, which is the foundation of much of the law on the subject. An agreement to keep the marriage secret does not invalidate it, although the fact of secrecy might be evidence that no marriage ever took place."

This is in harmony with our holding in *State v. McKay*, 122 Iowa 658. See, also, *Davis v. Stouffer*, 132 Mo.

App. 555 (112 S. W. 282); *Bishop v. Brittain Inv. Co.*, 229 Mo. 699 (129 S. W. 668); Abbott on Trial Evidence (2d Ed.) 101.

Does the proof in this case establish a common-law marriage? Plaintiff testified that she kept company with defendant for several months before they were married; that, during said time, defendant importuned her to have illicit relations with him, but that she always refused; that defendant finally proposed marriage, and she accepted; that he finally said to her that they were the same as married, and he would take her as his wife and take care of her; that they thereafter had frequent acts of sexual intercourse; and that she always believed and understood that they were husband and wife, although she did not fully understand her legal rights. Some months following the alleged marriage, she went to La Crosse, Wisconsin, where her parents resided, and shortly thereafter gave birth to a female child, referred to in the evidence as Ruth Love, who, at the time of the trial, was 11 years of age. During the following years, defendant wrote her many letters, addressing them to Mrs. J. G. Love. They occasionally met at Austin, Minnesota, and other places, and at one time, he registered them at a hotel as husband and wife, under an assumed name. Plaintiff, however, denies that she knew he had not registered under their true name.

3. MARRIAGE: common-law marriage: sufficiency of evidence.

The record discloses a rather voluminous correspondence, though but few of plaintiff's letters were introduced. He addressed her always as "My Dear Girl," frequently mentioning Ruth, and closing the letter with "Love to both," "Goodbye to both," "Yours as ever," etc. In none of them does he refer to her directly as his wife. In many of the letters, he inquires after Ruth's health, and whether she can walk, and in 1909, wrote:

"How is Ruth? Is she walking yet? You wrote me in July that she was walking, and you have never told me of her getting worse. Now I want to know what condition she is in, and if she is getting worse, I will bring her down here to the hospital; so you let me know for sure. I have just been called, and I will close for this time. Yours as ever, Love to both. J. G!."

It appears that Ruth is, as the result of infantile paralysis, a cripple, and this perhaps explains his frequent inquiry regarding her health, and whether she was able to walk. The correspondence is wholly free from offensive or forbidding language, and in it there is no reference to immoral relations between the parties. Plaintiff frequently urged a public marriage ceremony, and testified that defendant constantly promised that they would go to housekeeping. She was a member of the Lutheran Church, and stated that she desired a marriage which conformed to the rules thereof, and a record that could not be denied, and that would protect herself and Ruth. She further testified that he did not desire their marriage to become known at Mason City, where he lived, but that he informed her that his parents knew about it. Plaintiff and defendant did not live together in the usual manner, and he seldom had opportunity to introduce her as his wife. She claims, however, that he did introduce her as his wife, to a druggist, whose name she did not recall, in Mason City. This he denies. He occasionally sent her small sums of money, frequently in his letters protesting his inability to send more.

While defendant, testifying in his own behalf, emphatically denies the marriage, the court below, who saw and heard the witnesses testify, sustained the allegations of plaintiff's petition. With this finding, without further discussion, we are content. To hold otherwise, upon the record, would be a great injustice to the plaintiff, and illegiti-

mize defendant's crippled daughter. The evidence of the alleged common-law marriage is persuasive, and defendant's conduct during the intervening years toward plaintiff and Ruth has been such as to leave no doubt that plaintiff has told the truth.

II. Counsel for appellant vigorously argues that the evidence fails to establish desertion. As indicated, the parties have never, in the usual sense, lived and cohabited together as husband and wife. He has resided at Mason City, and she elsewhere, except for occasional brief visits to him at Mason City and other places. This, however, was originally in accordance with the mutual arrangement of the parties. The fact that they did not live together as husband and wife in the usual way does not prevent proof of desertion, within the meaning of that term as used in Section 3174 of the Code. *Tipton v. Tipton,* 169 Iowa 182. We said in *Kupka v. Kupka,* 132 Iowa 191, quoting from Nelson on Divorce and Separation, that:

4. DIVORCE: desertion: proof.

"Four elements are essential to a divorce because of desertion: (1) The cessation of the marriage relation; (2) the intent to desert; (3) the continuance of the desertion during the statutory period; and (4) the absence of consent or misconduct of the deserted party."

It appears without dispute in the record that defendant frequently sent small sums of money to plaintiff, the aggregate amount of which is not shown. The correspondence between them continued at least until July 10, 1916, when defendant wrote plaintiff a letter of the same general character of those previously written to her since the marriage. In this letter, he requests plaintiff to "tell the little one I will be up to see her before the summer is over, if I have to ask Dad for more money." The parties did not meet for two or three years prior thereto; but in August, 1915, they met at LaCrosse, Wisconsin, and effected a reconciliation, at

which time defendant promised plaintiff that he would work steadily during the winter, save his money, and in the spring they would have a ceremony performed, and go to housekeeping. So far as the record discloses, there was no change in their relations thereafter, until shortly before the commencement of this suit. By an amendment to plaintiff's petition, filed November 8, 1917, she alleges a reconciliation, as above stated, and that they lived and cohabited together as husband and wife during various periods of that month. While it is true that the defendant, upon the trial, denied the marriage, and admitted that he was engaged to another woman, the record leaves it uncertain as to when this engagement was entered into. Defendant testified that he became engaged to a girl in Fort Dodge in 1902, who was later the subject of correspondence and some difficulty between the parties; but whether this is the engagement referred to by him in his testimony, is left in doubt.

The record does not establish desertion on the part of defendant for a period of two years before the commencement of this suit, but, on the contrary, shows a reconciliation within that period, followed by months of intimate correspondence, such correspondence as was carried on from the time of their marriage. It is our conclusion that the evidence abundantly establishes the marriage, and that the court below rightly held that plaintiff and defendant are husband and wife. The plaintiff may, therefore, have a decree in this court or in the court below, at her election, affirming and sustaining the marriage; but for the reason that plaintiff has failed to establish desertion, the judgment of the court below is—*Reversed*.

5. DIVORCE: desertion: sufficiency of evidence.

LADD, C. J., GAYNOR and PRESTON, JJ., concur.