# CASES DETERMINED

# January Term, 1927.

NETHERTON, Appellant, vs. FRANK HOLTON & COMPANY
and another, Respondents.

*September 15, 1926—January 11, 1927.*

*Corporations: Contract for sale of stock fraudulent as to stock-
holders and contrary to public policy: Relief in equity.*

1. A contract for the sale of stock of a corporation which is
   void as in fraud of the interests of the stockholders and as
   contrary to public policy may be inquired into in an action
   by the purchaser to compel the corporation to recognize
   him as a stockholder upon payment of promissory notes given
   by him for the payment of the purchase price of a part of
   the stock, even though the notes and the pledge of the stock
   as collateral are evidenced by separate writings. p. 488.
2. A court of equity will leave the parties to such a contract
   where it finds them, and deny to any applicant relief from or
   under it. p. 489.

APPEAL from a judgment of the circuit court for Wal-
worth county: CHESTER A. FOWLER, Judge. *Affirmed.*

The defendant *Frank Holton* as an individual had started
and substantially developed the business of manufacturing
band instruments which was taken over by defendant com-
pany, an Illinois corporation, in 1904. In 1917 it moved
to Elkhorn, Wisconsin, where it has since continued to do
business and grow, *Frank Holton* holding a very substantial
portion of its capital stock. After prior negotiations and

on March 1, 1921, a written contract was made between the plaintiff, then a practicing lawyer in Chicago, and the defendant *Frank Holton,* wherein it was among other things provided:

That the plaintiff was to purchase and said *Holton* was to sell 5,321 shares of the common capital stock for $250,000, and perform certain covenants and agreements specified in said contract.

Of this sum $50,000 was to be, and was then or shortly thereafter, paid in cash and certain shares of stock turned over to said plaintiff and then or thereafter disposed of by him and are of no further concern here.

The balance of $200,000 was to be paid in cash in instalments on or before certain dates fixed in said agreement, the last of such, for $90,000, on or before March 1, 1927, together with interest on unpaid sums.

It was also provided that the payments in such instalments were each to be secured by a promissory note of the same amount, having as collateral to be attached thereto 213 shares of said balance of the capital stock for each $10,000.

Further provisions were made whereby the said *Holton* was to have the right to nominate and have elected two of the directors of the said corporation and the plaintiff was to vote the stock standing in his name for the election of such persons; that in case there was any increase in the number of directors said *Holton* was to nominate and have elected at least half of the number of the authorized directors; *Holton* was to remain the president of the company, if he so desired, so long as any indebtedness remained unpaid; that if default be made in the performance of any of the covenants and agreements or the contract be breached, the plaintiff appointed *Holton* to be his proxy to vote any and all of the shares of the capital stock then held by *Holton* as collateral security as aforesaid; that *Holton* should be

given the right to select two members of an executive committee from among the board of directors and the plaintiff to have the right to select one such member; that so long as plaintiff fully complied with the terms and conditions of the contract he should have the right of selecting the secretary and treasurer of said company; that there should be no change in the management or policy of the company without the consent and approval of *Holton;* the salary of each was fixed as therein described; other provisions were also contained; and that all the agreements, covenants, and conditions shall extend to and be obligatory upon the heirs, legal representatives, and assigns of the said parties.

Stock certificates, aggregating 4,260 shares, in plaintiff's name and indorsed by him were attached to said notes. Each of said notes with such collateral security contained a provision in substance giving to *Holton* authority to sell said stock on the maturity of the note, upon notice, at public or private sale, to apply the proceeds on the payment of the note, interest, expenses, etc., with a promise to pay any deficiency, and permission to *Holton* to apply any surplus on any subsequently maturing note.

Shortly thereafter plaintiff went to Elkhorn and assumed charge to some extent of said company's affairs. Disputes arose between them, and in October of 1921 he was ostensibly removed as secretary by vote of the other directors of the company.

November 22, 1921, *Holton* caused to be served on plaintiff a notice of rescission of the contract of March 1st, and on December 13th the said 4,260 shares so attached to the said notes were surrendered by *Holton* to the company and a new certificate for 4,260 shares was issued in *Holton's* name and thereafter kept by him and such shares are the substantial subject matter of this controversy.

In January, 1922, on the commencement of this action,

plaintiff's affidavit as basis for an adverse examination of
defendant before pleading stated that the general nature
and object of it was to enforce the rights of the plaintiff
under the agreement of March 1st, which contract *Holton*
had in form rescinded and canceled; to set aside and hold
for naught said attempted rescission of said contract; to
set aside the action of the board of directors removing
plaintiff from his office; to enjoin the defendant from inter-
fering with the enjoyment by plaintiff of his rights under
said contract of purchase of said stock and from perform-
ing his duties and obligations as a majority stockholder,
director, and secretary of the defendant corporation; to
determine the amount, if any, due to *Holton* from the plaint-
iff under said contract of purchase so that the plaintiff may
pay the same.

The verified complaint of December 29, 1922, alleged
among other things the purchase by plaintiff of *Holton*
of the shares of the capital stock of the corporation for the
$250,000; the transfer of the same to plaintiff on its books
and the issuing of a new certificate; the making of the
promissory notes for the unpaid balance; the indorsing in
blank of the certificates of stock so purchased by and de-
livered to plaintiff to be held solely as collateral security by
the defendant *Holton* on said notes; the acts of the defend-
ant *Holton* December 13, 1921, in canceling and returning
the certificates and the issuance of a new one for the total
amount to said *Holton,* which amount was the controlling
interest in said corporation; that plaintiff had been deprived
of his rights and privileges as owner and holder of said
stock subject to its pledge, and under the laws of Illinois
was entitled at all times to vote said stock as pledgor; that
plaintiff is ready and willing to make payments on any or
all of said notes as the court shall direct; that he has no
adequate remedy at law.

His prayer for judgment was to have the notice of

December 13, 1921, declared null and void; directing the
executing of an appropriate certificate of stock of like tenor
with those theretofore delivered as collateral security; de-
termining the amount due under said notes or any of them;
directing the plaintiff to pay and the defendant *Holton* to
receive the same; to direct each of the defendants to recog-
nize the plaintiff as the owner of the aforesaid pledged
stock subject to the aforesaid contract of pledge, and for
other relief.

The court found among other things and in substance,
that plaintiff made false representations to induce *Holton*
to enter into the contract and which were relied upon by
*Holton;* that plaintiff was guilty of a breach of trust towards
the company after entering upon the management of its af-
fairs; that as a result of plaintiff's misconduct and disputes
with *Holton* the directors of the company removed plaint-
iff; that the contract being void as in fraud of the interests
of the stockholders of the corporation and as contrary to
public policy, the court would aid neither party to compel
further execution of said contract or restore the status cre-
ated by their original partial performance, and that the
complaint should be dismissed with costs.

From the judgment plaintiff appeals.

For the appellant there were briefs by *Moss, Olds &
La Rue,* attorneys, and *William R. Moss,* of counsel, and
oral argument by *William R. Moss, M. H. Olds,* and *John
F. Bellair,* all of Chicago.

For the respondents there was a brief by *Simmons,
Walker & Wratten* of Racine, attorneys, and *Delbert A.
Clithero* of Chicago, of counsel, and oral argument by *John
B. Simmons* and *Charles F. Wratten.*

The following opinion was filed October 12, 1926:

ESCHWEILER, J.  In the trial below it was frankly con-
ceded in open court by counsel for both parties, appellant

being then represented by other counsel than those on this appeal, that the contract of March 1, 1921, set forth above, was void as against public policy. Such concession was advisedly made under repeated decisions of our own court, to say nothing of authorities elsewhere. *Sauerhering v. Rueping,* 137 Wis. 407, 413, 119 N. W. 184; *Timme v. Kopmeier,* 162 Wis. 571, 576, 156 N. W. 961; *W. C. Zachow Co. v. Grignon,* 172 Wis. 449, 455, 179 N. W. 593.

It is contended by plaintiff, appellant here, that such contract of March 1, 1921, may be, in effect, disregarded and his claim asserted and upheld solely upon the alleged facts that the shares of corporate stock here involved were issued to him on the books of the company, certificates made out in his name, indorsed by him, and then pledged as collateral security for the payment of the several notes, and pursuant to the terms embodied in such notes, and that being by such writings clothed with the legal title to such shares, his rights as pledgor were violated by the alleged unlawful cancellation of such certificates and the issuance of new stock in lieu thereof to the defendant *Frank Holton.* We cannot, however, recognize any such proposition as controlling in this case where plaintiff now comes into a court of equity asking for relief.

Two fundamental propositions in the law concerning the granting or withholding of equitable relief, too well and long established to now need the citation of authorities, boldly and baldly confront us at the very threshold of consideration of this appeal and plainly require an affirmance.

Equity looks at the substance rather than the mere name of things, and he who comes into equity must come with clean hands.

The issuance to and pledging by plaintiff with defendant of the certificates of stock in question here, though evidenced by separate writings, are nevertheless but parts of

an entire contract embodied in the broader, and including the writing of March 1st above recited. In such a situation a court of equity should not, and the trial court very properly did not, close its eyes to all but a part of the real transaction between the parties and dispose of claims upon a partial disclosure of or examination into the entire transaction. In the face of the contract of March 1st it is idle to say that the issuance of the certificates, the pledging to and the placing them in the hands of defendant, was solely under the terms and conditions expressed in such promissory notes. The slightest scrutiny of this contract, of the legal effect of which plaintiff, a practicing attorney, can illy afford in a court of equity to deny knowledge, demonstrates beyond the need of further recital that the plaintiff's title, if any, to the certificates of stock attached by him to the promissory notes was obtained only through, by, and because of the terms and conditions of the original and all-comprehending written contract.

He demanded that the court protect him in his title to this stock. His title, therefore, became a legitimate and proper subject of inquiry. He has no option of limiting such inquiry to the features alone which he prefers.

With the respective shares of blame, the respective merits or demerits of the parties to such contract, we are in no wise concerned, and need therefore indulge in no discussion of the various assignments of error presented by appellant here upon certain of the findings of fact. A court of equity leaves the parties to such a situation just where they placed themselves and as the court finds them; its doors are closed to any applicant for relief from or under such a contract. If authorities were at this day needed to be cited on so plain a proposition, an abundant measure could be furnished. As a perhaps needless addition, however, we cite the following: *Twentieth Century Co. v. Quilling,*

130 Wis. 318, 325, 110 N. W. 174; *Continental W. P. Co. v. Louis Voight & Sons Co.* 212 U. S. 227, 262, 29 Sup. Ct. 280; *Howe v. Chmielinski,* 237 Mass. 532, 536, 130 N. E. 56.; *Church v. Brown,* 247 Mass. 282, 287, 142 N. E. 91.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on January 11, 1927.