MADELINE BRADLEY, Appellant, v. JOHN HODGDON BRADLEY et al., and JOHN H. MACLAY, Executor, Appellees.

No. 45493.

MAY 13, 1941.

408

Paul Ahlers, Myer H. Gladstone, and Ira D. Schultz, for appellant.

Robert W. Clewell, for appellees.

MITCHELL, J.—Plaintiff commenced this action in equity, claiming that she is entitled to possession of an undivided one-third interest in and to certain real estate in Dubuque County of which John H. Bradley died seized, by virtue of her marriage to the said deceased.

The defendant denied that the plaintiff was married to John H. Bradley, and denied that she was entitled to any interest in his estate. During the trial, by leave of court, the defendants filed an amended defense that the plaintiff had married one James Long in February, 1930, and that during September of 1930, she filed a bill for divorce against him in Jo Daviess County, Illinois, alleging that she was a resident of Jo Daviess County for the necessary period of time, when in truth and fact, she never resided anywhere in the State of Illinois; and hence the Circuit Court of Jo Daviess County, Illinois, never acquired jurisdiction of the subject matter in said divorce action, and that, therefore, the decree of divorce she obtained from James Long was null and void.

Plaintiff filed a motion to dismiss the said amendment to the answer, and the court sustained said motion.

The trial court found that the plaintiff was not the wife of John H. Bradley, deceased, during his lifetime, and was not his widow, and thereupon decreed that her petition be dismissed.

Plaintiff being dissatisfied has appealed. The defendants have also filed a cross-appeal from the ruling of the trial court dismissing the amendment to the answer. The plaintiff will be hereinafter referred to as the appellant and the defendants, the appellees.

John H. Bradley died March 26, 1939, at the age of 72 years. He was survived by three children, two sons and a daughter. Mr. Bradley's wife and the mother of his children died July 2, 1917.

At the time of the trial, the appellant was forty-two years of age. Her maiden name was Madeline McCauley. In 1927 she commenced a breach of promise suit against another party, which was settled. According to appellant's brief, she met John H. Bradley on New Year's Day, 1926, and kept company with him until 1929. In September of 1929, she went to Chicago, where she was employed as a practical nurse. On February 1, 1930, she was married to James Long. On September 30, 1930, she filed a complaint for divorce in the Circuit Court of Jo Daviess County, Illinois, and at the November term a decree was entered. It is claimed by appellees that the decree of divorce was null and void, because under the Illinois law the complainant in a divorce proceeding must live in the county where the suit is filed, and that Madeline McCauley never lived in Jo Daviess County, Illinois.

The evidence shows that John H. Bradley, the decedent, was addicted to the use of morphine and required the services of a nurse. Appellant testified that she administered morphine to Mr. Bradley through the years. That when she first met him he was using six grains of morphine a day, and at the time of his death he was using twenty-six grains. In January of 1931, she went to live at the home of John H. Bradley and lived there continuously until the time of his death. She admits that she was paid wages in 1931 and part of 1932. From 1931 on, they traveled to various cities in the middlewest and they registered at hotels in these cities as Mr. and Mrs. John H. Bradley. She admits that they engaged in an illicit relationship up until September 1, 1934.

It is her claim that on September 1, 1934, she became the common-law wife of John H. Bradley and she offered in evidence Exhibit "A" which is as follows:

"September 1st, 1934

"I, John H. Bradley has asked Madeline McCauley to come back and live with me again and stay untill death do we part,

All papers are cancels which we have both sign in Aug— 1934— against each other.

"(Signed) John H. Braadley."

After Exhibit "A" was signed they went to Chicago, and she testified that Mr. Bradley gave her a ring, without any markings on it, which had five small diamonds, referred to as chip diamonds.

Proper objections were made to the introduction of Exhibit "A" and the testimony in regard to the ring, on the grounds that she was incompetent to testify as to the exhibit and the whole transaction surrounding it under what is commonly known as the "Dead man's statute".

In appellant's brief we find this concession, we quote:

"While the appellant may have been incompetent under the "Dead man's Statute" to testify to any transaction or communication with the deceased, yet she was competent to testify to the circumstances under which their cohabitation was begun and continued."

Exhibit "A" is a very interesting paper. It is signed by only one person and while it is claimed it was signed by John H. Bradley the signature is Braadley, while the correct spelling is Bradley. We do not find it necessary to pass upon the question of the admissibility of Exhibit "A" or the testimony in regard to the ring.

The appellant makes the following concession in her brief and argument. We quote:

"In order to save the time of the appellees and of the Court, the appellant admits that prior to September 1, 1934, her cohabitation with the deceased, John H. Bradley, Sr., was illicit and meretricious. She also concedes the rule of law is, that where cohabitation between two parties is illicit and meretricious in its inception, it is presumed to continue in that status until the said cohabitation is shown to be marital in its intention, and that the burden of proof is upon the party asserting such marriage to show that the said illicit and meretricious relations have, in fact, changed to lawful cohabitation.

"In the case of Love v. Love, 185 Iowa 930, 171 N. W. 257,

this Honorable Court, following a long line of earlier cases, defined the present status of common-law marriages in Iowa in this language on Page 931 of the Official Report.

"'Common-law marriages have long been recognized by the law of this State. Blanchard v. Lambert, 43 Iowa 228; McFarland v. McFarland, 51 Iowa 565. The difficulty is not in defining common-law marriage, but arises generally from the uncertainty of proof. If the parties are capable of contracting and mutually agree that they are husband and wife, with the present intention of becoming such, and this is followed by a consummation of the marriage relation, the contract is complete. The consummation of the contract does not depend upon cohabitation for a period of time, but like other contracts, it is complete when made. Marriage, whether solemnized in the usual way or by mutual consent and agreement, is generally followed by the parties dwelling together and performing the duties and obligations of the marriage relation. Proof, therefore, of continued cohabitation between parties who have held themselves out to the public as husband and wife justifies the inference that the parties are married. If the marriage agreement testified to by plaintiff was admitted by the defendant, proof that the parties lived and cohabited together, or held themselves out to the public as husband and wife, would not be required.' "

With the statement of appellant before us that the burden of proof is upon her, we turn to the record.

She introduced two filling station employees in Dubuque, who testified that Mr. Bradley told them to charge Mrs. Bradley's gas to his account. A salesman for the Hoover Sweeper Co., who went to the Bradley house, and was told according to his testimony, by Bradley to see Mrs. Bradley. A man and his wife, who lived ten miles south of Dubuque, testified that Mr. Bradley introduced Mrs. Bradley as his wife, but this happened in 1933, so it is of little value to the appellant as the alleged common-law marriage is not claimed to have taken place until September 1, 1934. Two employees who worked at the Bradley home, testified that he called the appellant "the Boss", "Mom" and Mrs. Bradley. A Peter Brant testified that Bradley called appellant "his wife". Appellant's sister-in-law and brother

both testified that Bradley told them that he and appellant were married. Appellant also offered the testimony of the Superintendent of Service at the Atlantic Hotel in Chicago, Illinois, and one of the bellboys, that on numerous occasions the appellant and Mr. Bradley registered as Mr. and Mrs. John H. Bradley and cards showing their registrations were introduced in evidence.

·The appellees offered the testimony of many witnesses that had known John Bradley for years, who testified to statements made both by the appellant and Bradley showing that they were not married. We shall not review the testimony of these witnesses, as we think the written record made by the appellant herself is sufficient to sustain the trial court.

On April 24, 1936, she swore to a petition praying for her appointment as administrator of her mother's estate signing as Madeline McCauley. On May 11, 1936, she signed a bond for the sale of real estate. Again she signed as Madeline McCauley. On May 4, 1936, she signed an application for a bond with the Massachusetts Bonding and Insurance Co., in which she gave her name as Madeline McCauley, that her occupation was that of housekeeper. The application also asked her to give the names and addresses of four or more persons not related to her, who had known her for some years past. The first name she gave was that of John H. Bradley, Capitalist, Dubuque, Iowa.

She called at the bank in Dubuque for the statement and cancelled checks charged against the account of John H. Bradley. She signed receipts for same on October 29, 1936, September 2, 1938, November 16, 1938, February 24, 1939, and April 4, 1939, and on each and every one of these receipts she signed as Madeline McCauley. Appellant raised fancy dogs and on November 3, 1938, she signed an order for an advertisement in a dog magazine, signing as Madeline McCauley. On April 7, 1938, she swore to and signed a warranty deed to certain real estate in Dubuque as Madeline McCauley. On October 8, 1934, she accepted a deed from John H. Bradley, unmarried, to Madeline McCauley, deeding certain real estate. On April 5, 1938, Margaret Welsh deeded certain property to Madeline McCauley, single. Appellant testified she still owned the property.

On April 5, 1938, she signed a mortgage as Madeline Mc-Cauley.

On May 24, 1938, she signed an application for a loan with the Dubuque Building and Loan Association in which she gave her name as Madeline McCauley, and that she was single.

On June 3, 1938, she signed a note as Madeline McCauley, and on the same day gave a mortgage to secure the note, swearing to it as Madeline McCauley.

She took out various policies of insurance in the name of Madeline McCauley.

On January 14, 1936, a check was issued ·by Bradley and Maclay to the order of Madeline McCauley, and she endorsed it on the back as Madeline McCauley.

On September 15, 1938, John H. Bradley made and executed a codicil to his last will and testament by which he gave ''to Madeline McCauley, my housekeeper, my residence described as Lot Six (6) of Ellen Corkey's Sub-division in the City of Dubuque, Iowa, this bequest being made in recognition of her faithful and considerate service while in my employ.'' This was objected to, but there is evidence in the record that Madeline McCauley knew of the codicil at the time it was made.

There is the testimony of John Duffy, the County Attorney of Dubuque County, that Madeline McCauley came to his office on March 20, 1939, in regard ,to another matter. He asked her her name and what she was doing and she replied Madeline McCauley, housekeeper for John Bradley. The doctor who treated John Bradley for many years, and had made over 200 calls at the Bradley house, never heard Mr. Bradley refer to Madeline McCauley as Mrs. Bradley. He also treated Madeline McCauley and sent her bills under the name of Madeline Mc-Cauley.

After John Bradley's death Madeline McCauley went to the bank in Dubuque· and signed her name as Madeline Mc-Cauley. On April 13, 1939, she wrote the following letter to John Bradley, son of John Bradley, Sr. We quote:

''Dubuque, Iowa, April 13, 1939

''Dear John:

''I was glad to hear from you and have given things considerable thought.

"You know since March, 1931, I have been living with your Father as his wife, that since that time we have traveled back and forth over the Country, have lived at hotels have been at Various places with different people, and at all times have been known as Mr. and Mrs. Bradley.

"I do not want to have any trouble, but I talked with a lawyer in Dubuque as to whether or not I had any rights as a wife. He informs me that Iowa recognizes the Common Law Marriage and that he believes under the facts and law in this case I am entitled to one third of the property left by your father. Before doing anything I thought I would write to you to see whether or not a fair agreement of some kind cannot be entered into between the children and myself in regard to this matter. Will you please write me just what you think of the matter.

"As ever,

"(Signed) Madeline"

It will be noted in the above letter written after John Bradley had died, that Madeline McCauley claimed that she had been living with John Bradley as his wife since March, 1931, while in the case at bar she claims that the common-law arrangement was not made until September 1, 1934.

Here we have a written record, written by Madeline McCauley herself, which dates from October, 1934, down until after the death of John Bradley, in which instruments, many of them sworn to, Madeline McCauley asserts that she is single, unmarried and her name is Madeline McCauley.

The distinguished and able trial court had the witnesses before him, and we are convinced from a reading of the record that he was right. We do not find it necessary to pass upon the cross-appeal.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.