GLADYS A. ABRAMSON, APPELLANT, v. MAX ABRAMSON ET AL., APPELLEES.

74 N. W. 2d 919

Filed February 10, 1956. No. 33750.

*Schrempp & Lathrop,* for appellant.

*Boyle & Hetzner,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Douglas

County. The action involves marriage and divorce. The trial court held a common-law marriage existed between the parties but denied Gladys A. Abramson, the plaintiff, separate maintenance for which she had prayed. However, on its own motion the trial court awarded plaintiff an absolute divorce and denied the defendant, Max Abramson, the divorce he had asked for in his cross-petition. In addition to awarding her a divorce the trial court awarded plaintiff the home in which she was living, the title to which is in her name and is legally described as Lot Twelve (12), Block Twelve (12), in Edgewood, an Addition to the City of Omaha, and located at 5924 Pacific Street in Omaha, Nebraska; the furniture and furnishings therein; the sum of $5,000 in lieu of permanent alimony; and attorney's fees totaling $3,000, defendant being ordered to pay all costs. Each of the parties filed a motion for new trial and from the overruling thereof the plaintiff perfected this appeal and the defendant has cross-appealed.

"Divorce cases are tried de novo on appeal to this court, subject to the rule that when credible evidence on material questions of fact is in irreconcilable conflict, this court will in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite." Schlueter v. Schlueter, 158 Neb. 233, 62 N. W. 2d 871.

In view of the nature of the questions raised by the cross-appeal we shall consider it first. Therein appellee contends the trial court erred in finding and holding that the parties were husband and wife by virtue of a valid common-law marriage. Since the common-law marriage must have been consummated in Iowa appellee raises the further question of whether or not the law of Iowa was properly raised.

"In the absence of the common law or statutes of any other jurisdiction in the United States being pleaded

and presented we will presume the common law or statutes of such other jurisdiction to be the same as ours." Scott v. Scott, 153 Neb. 906, 46 N. W. 2d 627, 23 A. L. R. 2d 1431. See, also, Forshay v. Johnston, 144 Neb. 525, 13 N. W. 2d 873.

The 1947 Legislature passed the Uniform Judicial Notice of Foreign Law Act, being Laws 1947, chapter 93, page 272, which is now sections 25-12,101 to 25-12,107, inclusive, R. R. S. 1943.

We said of this act: "The foregoing statutes were not intended to remove the necessity of pleading and presenting the common law or statutes of another jurisdiction of the United States when recovery based thereon is sought in an action brought in this state to enforce a cause of action arising thereunder. It only removes the requirement of proving it. A court may require that it be pleaded and presented." Scott v. Scott, *supra*. See, also, Smith v. Brooks, 154 Neb. 93, 47 N. W. 2d 389.

In her petition appellant pleaded: "Plaintiff, Gladys A. Abramson, and defendant, Max Abramson, are husband and wife respectively, and were lawfully married on September 5, 1929, in Clarinda, Iowa; * * *." No motion was made to make this more definite and certain as to the type of marriage appellant claimed was entered into by the parties.

In his answer appellee pleaded: "Defendant further alleges and without waiving any of the foregoing that if this Court should find that sufficient facts exist on which a common law marriage could be based, that the plaintiff has been guilty of extreme cruelty, resulting in the destruction of the objects and ends of matrimony, if such exist."

The bill of exceptions fully establishes from the evidence adduced and by statements made by the court and counsel for both sides during the course of the trial that the parties and the court fully understood this question as one of the issues raised by the pleadings and being tried by the court. At the close of appellant's

case appellee's counsel made a motion to dismiss appellant's petition and as one of the grounds therefor stated: "That the plaintiff has failed as a matter of law to prove a common law marriage in Iowa; That he has failed to prove the essential requirements of a common law marriage in Iowa; That he has failed as a matter of law to prove a common law marriage in Iowa for the reason that the testimony is insufficient as it is without corroboration; * * *."

We find this issue was sufficiently pleaded and presented in the lower court to properly raise the issue in the trial court and therefore reviewable on appeal. See, § 25-12,103, R. R. S. 1943; Scott v. Scott, *supra*.

Even so, appellee contends it is fundamental that uniform laws are based upon reciprocal laws in other jurisdictions involved and, in the absence of similar enactments in the foreign jurisdiction (Iowa) are without force and effect, citing section 25-12,106, R. R. S. 1943, in support of such contention. This section provides: "This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the laws of those states which enact it."

We do not think this, or any other provision of the act, makes any such requirement. The act is the law of this state and applicable to any action brought in the courts of the state seeking to enforce rights based upon the common or statute law of any state, territory, or other jurisdiction of the United States. See § 25-12,101, R. R. S. 1943.

As already stated, appellant brought her action for the purpose of securing separate maintenance. As stated in Scott v. Scott, *supra*: "While such actions are proper, however, by their very nature they require a marriage relationship to exist between the parties for it is on that relationship that the right thereto must be based."

Since 1923 a common-law marriage could not be entered into in this state. See § 42-104, R. R. S. 1943. How-

ever, "The general rule is that the validity of a marriage is determined by the law of the place where it was contracted; if valid there it will be held valid everywhere, and conversely if invalid by the lex loci contractus, it will be invalid wherever the question may arise." Forshay v. Johnston, *supra.* See, also, Scott v. Scott, *supra.*

During the period of time herein involved a common-law marriage could be legally entered into in Iowa. See, Pegg v. Pegg, 138 Iowa 572, 115 N. W. 1027; In re Estate of Boyington, 157 Iowa 467, 137 N. W. 949; Love v. Love, 185 Iowa 930, 171 N. W. 257; State v. Grimes, 215 Iowa 1287, 247 N. W. 664; Bradley v. Bradley, 230 Iowa 407, 297 N. W. 856; In re Estate of Stopps, 244 Iowa 931, 57 N. W. 2d 221.

"Generally in order to constitute a valid common-law marriage there must be a contract or mutual agreement presently to become husband and wife between persons capable in law of making such a contract or agreement, and the contract or agreement must contemplate a permanent union, exclusive of all others." 55 C. J. S., Marriage, § 19, p. 843.

"A merely meretricious relationship does not constitute a sufficient basis of a common-law marriage, and cohabitation of two persons who are generally reputed to be husband and wife, or introduction or holding out as husband and wife by the persons concerned, does not in itself constitute such a marriage." 55 C. J. S., Marriage, § 22, p. 850.

The law of Iowa as to common-law marriages is stated in Pegg v. Pegg, *supra,* as follows: "We recognize so-called common-law marriages as valid; but for such a marriage to be valid there must be a present agreement to be husband and wife, followed by cohabitation as such."

And in In re Estate of Medford, 197 Iowa 76, 196 N. W. 728, it is stated: "To constitute a common-law marriage, there must be a present agreement between the

parties to be husband and wife, followed by cohabitation as such."

"Contracts of this character may be per verba de praesenti; that is, where the parties take each other in the present tense, implying that the marital relation is constituted immediately, and contracts per verba futuro, which implies no more than the parties will marry each other at a later time. Contracts of the former sort, when duly acted upon, create a valid marriage; while words evidencing only the intention to be married in future are ineffectual even where followed by cohabitation." State v. Grimes, *supra.*

No particular form of contract is necessary. Brisbin v. Huntington, 128 Iowa 166, 103 N. W. 144. However, "* * * a mere written or oral agreement to be husband and wife, without present intention to assume that relation in fact, does not constitute a marriage between the parties, especially if the agreement is entered into for some other purpose, is well settled." Pegg v. Pegg, *supra.* See, also, State v. Grimes, *supra.*

In Love v. Love, *supra,* where an oral understanding was involved, the court laid down the evidentiary rule in this regard as follows: "The difficulty is not in defining common-law marriage, but arises generally from the uncertainty of proof. If the parties are capable of contracting, and mutually agree that they are husband and wife, with the present intention of becoming such, and this is followed by a consummation of the marriage relation, the contract is complete. The consummation of the contract does not depend upon cohabitation for a period of time, but, like other contracts, it is complete when made. Marriage, whether solemnized in the usual way or by mutual consent and agreement, is generally followed by the parties' dwelling together, and performing the duties and obligations of the marriage relation. Proof, therefore, of continued cohabitation between parties who have held themselves out to the public as husband and wife justifies the inference that the parties

are married. If the marriage agreement testified to by plaintiff was admitted by the defendant, proof that the parties lived and cohabited together, or held themselves out to the public as husband and wife, would not be required." See, also, Bradley v. Bradley, *supra*.

Cases involving agreements, oral or written, in which this rule has been applied are Pegg v. Pegg, *supra;* In re Estate of Wittick, 164 Iowa 485, 145 N. W. 913; Love v. Love, *supra;* State v. Grimes, *supra;* Bradley v. Bradley, *supra*. In other words, evidence as to cohabitation, holding out as man and wife, and general repute in the community in regard thereto are for the purpose of showing the intent with which such an agreement was entered into.

Before discussing the evidence there are additional principles which have application here and therefore should be set forth. They are:

"* * * it is well settled that, where cohabitation is in its beginning illicit, affirmative proof of a subsequent present intention to change that relation into the legitimate relations of husband and wife is essential to establish a marriage." In re Estate of Boyington, *supra*. See, also, State v. Grimes, *supra*.

That evidence relating to the relationship of the parties in Nebraska was competent, not as tending to show a relationship entered into between the parties in Nebraska but as bearing upon and explanatory of what had preceded that time. See In re Estate of Wittick, *supra*.

The evidence as to the appellant and appellee having taken trips to other states, including Iowa, is subject to the following: "Furthermore, it will not be held that such parties have entered into a common-law marriage if they made temporary sojourns or trips into Colorado or some other common-law state where they simply cohabited and held themselves out as husband and wife, without intending to or changing their domicile or residence to that jurisdiction, and without intending to or

entering into a common-law marriage contract in that state in conformity with its laws." Binger v. Binger, 158 Neb. 444, 63 N. W. 2d 784.

The testimony of both appellant and appellee, particularly that of appellee, lacks much to make it worthy of belief. However, in view of what is hereinafter held, we shall take the testimony of appellant as the basis for arriving thereat.

Appellant met appellee in St. Joseph, Missouri, in the latter part of 1928. She was at that time living with her parents on a farm about 10 miles west of St. Joseph. On September 5, 1929, she and appellee left St. Joseph in the latter's car and drove to Clarinda, Iowa. At that time she was 17 years of age and he was 21. There they stayed overnight in a hotel or tourist home. The next day they drove to Council Bluffs, Iowa, and stopped at the Ogden Hotel which is located on Broadway. They stayed at this hotel some 3 months. They then moved to a hotel located west of the Ogden. It was also located on Broadway in Council Bluffs. They stayed in this hotel about a month. Then they moved into a house in the neighborhood of Twenty-eighth Street and Avenue H in Council Bluffs. They lived in this house until about November 1931 when they moved to the Clearmont Hotel in Omaha, Nebraska.

During the time they lived together in Iowa appellant testified they cohabited together and held themselves out as husband and wife.

After they moved to Nebraska admittedly they lived together as man and wife, held themselves out as such, and had the general reputation in the several communities where they lived that they were such. However, appellee testified they never lived together until appellant came to Nebraska and started living with him in the Clearmont Hotel. After living in the Clearmont Hotel for some time they moved to various homes in Omaha, living at 5924 Pacific Street at the time appellee left

appellant in the fall of 1952. Appellant was still living at this address at the time of trial.

Two children were born to these parties: Maxine, who is living with appellant, on April 14, 1932, and a son, who died at about the age of 3 years, sometime thereafter. Appellant also testified she had a miscarriage while they were living in Council Bluffs.

Appellant's testimony shows the parties had lived together as man and wife since September 5, 1929; had always held themselves out as husband and wife; and, after coming to Nebraska in November 1931, had a general reputation in the communities of Omaha where they lived as being husband and wife. The question then arises, was this done pursuant to any understanding or agreement that they intended to become husband and wife. In this respect appellant testified as follows:

"Q- Prior to the time that Maxine was born did you have any conversation with Max Abramson about going through a marriage ceremony and if so what did he tell you? A- Well, that we were already married.

"Q- What did he tell you was the reason you were married? A- After we slept together. I suppose that would be reason enough.

"Q- He contended that you were married by that act, is that correct? A- Yes.

"Q- Did you rely on his word in that respect? A- Yes, I did.

"Q- Have you always regarded yourself as a married woman? A- Yes, I have * * *."

"Q- You felt you were married to him because of having lived with him and had three children? * * * A- Yes.

"Q- The fact that you slept or lived with him in Iowa does that lead you to believe that you are married to him? A- Yes.

"Q- And on that solely you determined that you are married to him? A- Not on that solely - some things that he said.

"Q- The things he said to you afterwards? A- Yes."

We find nothing in the evidence of any agreement or understanding had between the parties on or before September 5, 1929, that they intended to become husband and wife. We think their relationship started out as an illicit or meretricious one and find nothing in the record in the way of affirmative proof that thereafter, while they were living in Iowa, that there was any present intent to change the relationship into one of legitimate relationship of husband and wife which, under such a situation, is essential to establish a common-law marriage.

Having come to the conclusion that no marriage ever existed between these parties the following is applicable: " '* * * The action was one in equity; both parties were asserting rights founded upon an illegal and void contract. In such a case, it is a well-settled rule that a court of equity leaves the parties to such a situation just where they placed themselves and as the court found them. Its doors are closed to any applicant for relief from or under such a contract. Netherton v. Frank Holton & Co., 191 Wis. 483, 489, 210 N. W. 379.' (Brill v. Salzwedel, 235 Wis. 551, 292 N. W. 908.)" Smith v. Smith, 255 Wis. 96, 38 N. W. 2d 12, 14 A. L. R. 2d 914.

It should be understood, as stated in 55 C. J. S., Marriage, § 35(c), p. 878, that: "* * * the fact of a meretricious relationship does not bar claims to the property acquired during the period of such relationship, where the claim is based on general principles of law without respect to a marital status; the fact that the parties have engaged in an illicit relationship does not bar either party from asserting against the other such property claims as would be otherwise enforceable."

As stated in Baker v. Baker, 222 Minn. 169, 23 N. W. 2d 582: "The parties are left to resort to such action in regard to their property rights as they may be advised."

Finally appellee, by his cross-appeal, questions the

trial court's authority to allow attorney fees. The rule in this state is: "It is the practice in this state to allow the recovery of attorney's fees and expenses only in such cases as are provided for by statute, or where the uniform course of procedure has been to allow such recovery." State ex rel. Ebke v. Board of Educational Lands & Funds, 159 Neb. 79, 65 N. W. 2d 392.

Section 42-308, R. R. S. 1943, provides: "In every suit brought either for a divorce or for a separation, the court may, in its discretion, require the husband to pay any sum necessary to enable the wife to carry on or defend the suit during its pendency; * * *."

As already stated herein such actions require a marriage relationship to exist between the parties and, in the absence thereof, cannot be sustained. In the absence of any right to bring and sustain such an action the statutory authority to allow attorney fees therein does not exist. As stated in 17 Am. Jur., Divorce and Separation, § 571, p. 453: "An allowance for counsel fees and suit money is, like an award of alimony, dependent upon the existence of the marriage relation; and if this is denied and the wife fails to refute such denial, her application must be refused owing to her failure to make out a prima facie case."

In view of the foregoing we reverse the judgment of the district court and remand the cause to it with directions that it be dismissed.

REVERSED AND REMANDED WITH DIRECTIONS.