CLARA C. TIMMERMAN, APPELLEE, V. JOSEPH D. TIMMERMAN, APPELLANT.

81 N. W. 2d 135

Filed February 8, 1957.   No. 34070.

*Baskins & Baskins,* for appellant.

*Beatty, Clarke, Murphy & Morgan, Donald W. Pederson,* and *Frank E. Piccolo, Jr.,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action by Clara C. Timmerman, plaintiff and appellee, against Joseph D. Timmerman, defendant and appellant. The action was commenced by a petition filed by plaintiff on June 29, 1955, wherein she alleged a marriage between the parties and that a child was born of the marriage. She prayed for a divorce, custody of the child, provision for support of the child, alimony for herself, suit money, and attorney's fees. Service of process was duly made upon the defendant.

Thereafter on July 5 and 6, 1955, pursuant to notice, a hearing was had upon an application of plaintiff for temporary allowances for alimony, child support, attorney's fees, and suit money, at the conclusion of which

an award of $100 a month for temporary alimony and child support was made. A temporary attorney's fee of $50 was allowed. The journal entry was filed July 8, 1955.

Thereafter on March 15, 1956, the defendant filed an answer and cross-petition. No point is made that it was out of time under the statute.

By the answer the defendant admitted that a marriage ceremony had been performed and that a child had been born to plaintiff, but in effect denied the validity of the marriage. The further answer was a general denial.

By the cross-petition he specifically denied the validity of the marriage. He prayed that the marriage be declared null and void and he further prayed that the custodial right of the child be determined.

On March 23, 1956, the defendant filed a request for the vacation of the order of July 6, 1955, on the ground substantially that it was without authority of law since the parties were never legally married. A hearing on this motion was set down for March 30, 1956.

Apparently the stated hearing was not had, but on April 4, 1956, the plaintiff filed a written answer to the motion to set aside the previous order. By this answer the plaintiff effectually admitted the invalidity of the marriage. She did so by admitting that the child was born out of wedlock, as follows: "Plaintiff further alleges that said child is a 'child born out of wedlock' within the meaning of Chapter 13, R. R. S., Nebraska, 1954, as amended, * * *." She alleged that the defendant had acknowledged the child. She prayed for an order and decree declaring the defendant to be the father of the child as a "child born out of wedlock" within the meaning of the statute, and that he be required to pay an amount to be fixed for support and maintenance together with suit money and attorney's fees.

Thereafter the defendant filed a dismissal of his cross-

petition. No responsive pleading was ever filed to the answer or cross-petition of the defendant.

On April 11, 1956, the defendant filed a motion for summary judgment dismissing the petition of the plaintiff for the reason that the marriage of the parties was null and void and therefore no divorce action for its dissolution could be maintained. Notice of hearing upon the motion was duly given. Notice was also given of the evidence the defendant intended to produce to support the motion.

By recital in a journal entry filed May 24, 1956, it appears that a hearing at which evidence was taken was had on April 4, 1956, on the motion of the defendant to vacate the order of July 6, 1955. Hearing was continued.

By recital in the same journal entry it appears that on April 21, 1956, a hearing was had on defendant's motion for summary judgment. The matter was taken under advisement.

Again by recital in the same journal entry it appears that on April 26, 1956, the motion for summary judgment was overruled and a finding was made that there were "issues between the parties in this action which should be tried and determined by the court."

Also by recital in this journal entry it appears that on April 28, 1956, the court on motion of the defendant set the case for trial on May 11, 1956. The court at that time on its own motion assigned the following issues to be tried: (1) Custody of child, (2) support of child, and (3) paternity of child. The pleadings were at that time in the condition hereinbefore described and they were not thereafter amended.

A hearing was had on that date the results of which were recited in the journal entry filed on May 24, 1956. The findings to the extent necessary to repeat them here are that the marriage was invalid; that the child in question had been proved to be a child born out of wedlock; and that defendant is the father of said child

within the meaning of Chapter 13, R. R. S. 1943, as amended. The adjudication conformed to the findings and the defendant was ordered to pay $150 a month for the support of the child until the further order of the court, to pay all sums due and delinquent under the order for temporary support, to pay costs of the action, and to pay an attorney's fee of $150. By the decree custody of the child was awarded to the plaintiff. From the adjudication made the defendant has appealed.

The brief of the defendant contains many assignments of error as grounds for reversal, however the basic contention is that this is an action for divorce, and it having been shown that a valid marriage did not exist, the court was without right to try and determine any other issue. Applied to the particular matters upon which an adjudication was made it is the contention of the defendant: (1) That the court was without power to determine in this action that a child born to plaintiff was a child of the defendant born out of wedlock; (2) that the court was without power pendente lite and after it was known that there was no valid marriage to require the defendant to pay for the support for the child; (3) that the court was without power to make a final award for the support of the child; and (4) that the court erroneously assessed the costs of the action and awarded an attorney's fee for plaintiff's attorney.

It appears that the first specification as it has been numbered and stated herein would have to be sustained if this were an independent action to determine the paternity of a child born out of wedlock. The type or types of action for the independent determination of the fatherhood of a child born out of wedlock are special and we deem them to be exclusive. They are found in Chapter 13, R. R. S. 1943. Two types of procedure are provided for by the chapter. One of these is found in section 13-106, R. R. S. 1943.

By this section it is pointed out that paternity may be established by acknowledgment or by a judicial pro-

ceeding. The type of judicial proceeding to establish paternity is by the statute declared to be the one described in the section. The declaratory words in this connection are "a judicial proceeding as hereinafter specified." The proceeding is described as follows: "Such proceeding shall be commenced by a complaint of the mother of the child, * * * which shall set forth the facts of paternity and of nonsupport and shall ask that the father be ordered to provide for the support of the child."

It may not well be said that the action before the district court which is being reviewed here conformed in anywise to the requirements of this section of the statute.

Another type of procedure is provided by sections 13-113 and 13-114, R. R. S. 1943. One of these sections has been amended but this became effective after the filing of the petition in this case.

By section 13-113, R. R. S. 1943, it is provided as follows: "In addition to all other penalties and enforcement devices provided for in sections 13-101 to 13-116, (1) any mother of a child born out of wedlock, * * * may make complaint before any justice of the peace, municipal judge, county judge, or district judge of the State of Nebraska accusing on oath or affirmation any person of being the father of said child." No procedure under this provision was before the district court for consideration in this case.

The chapter of the statutes in question, which was adopted in 1941, is an amendatory substitute for Chapter 9, Compiled Statutes of 1929, which made provision for the support of bastards. This is made clear by the title to the act. Laws 1941, c. 81, p. 322.

The general rule as to legitimating bastards in common-law states as stated in 10 C. J. S., Bastards, § 9, p. 53, is the following: "In common-law jurisdictions the only method of legitimating bastards is by or under a statute, * * *."

In 7 Am. Jur., Bastards, § 52, p. 660, it is said: "According to the early common law of England, children born out of lawful wedlock could not be rendered legitimate by any subsequent act of their parents, but the power of the legislature to legitimate or provide for the legitimation of bastard children has long been recognized both in England and in this country."

The Legislature at its session in 1866 adopted the following which appears now as section 49-101, R. R. S. 1943: "So much of the common law of England as is applicable and not inconsistent with the Constitution of the United States, with the organic law of this state, or with any law passed or to be passed by the Legislature of this state, is adopted and declared to be law within the State of Nebraska."

Chapter 13, R. R. S. 1943, is an act of the Legislature which conflicts with the common-law rule and the power to act under it being statutory it must be strictly construed. Thus for the purpose of solely determining the paternity of a child born out of wedlock, resort may be had only to the remedies provided by the statute.

The question has not been previously passed upon by this court but we are constrained to the view that these provisions are exclusive as to the procedure for the independent determination of the paternity of a child born out of wedlock.

It does not follow however that the court may not, in an action wherein the nullity of a marriage has been decreed, also make provision for the care, custody, and maintenance of an illegitimate child of the parties.

Section 42-311, R. R. S. 1943, provides in part: "Upon pronouncing a sentence or decree of nullity of a marriage * * * the court may make such further decree as it shall deem just and proper concerning the care, custody, and maintenance of the minor children of the parties, and may determine with which of the parents the children or any of them shall remain."

Section 42-312, R. R. S. 1943, gives the court, after

making provision for the care, custody, and maintenance of children, the power to revise or alter the provision so made.

It clearly appears that the district court in this case had the power to determine the question of whether or not the marriage was valid and if found to be invalid to declare it null and void. In truth the defendant by his motion for summary judgment effectually asked the court to so adjudicate.

By the terms of section 42-311, R. R. S. 1943, the court was specifically empowered, in the event that the marriage was decreed to be a nullity, to make provision for the care, custody, and maintenance of any child or children of the parties. It is but a matter of reason and logic to say that the power could not be exercised in the absence of proof of the fact that there was a child or there were children. It is likewise true that proof of paternity could be accomplished by admission of the father.

The question arises, as applied to this case, as follows: Was the court empowered to determine the question of paternity other than by an adjudication made pursuant to section 13-106 or 13-113, R. R. S. 1943, or in other words, was it barred from the full performance of the power granted by section 42-311, R. R. S. 1943, in the absence of evidence of an adjudication made under section 13-106 or 13-113, R. R. S. 1943?

We think that the answer must be that the court had the power to hear evidence and to determine the question of paternity in the absence of evidence of an adjudication under section 13-106 or 13-113, R. R. S. 1943.

Section 42-307, R. R. S. 1943, provides in part: "Suits to annul or affirm a marriage, or for divorce, shall be conducted in the same manner as other suits in courts of equity."

In Harrington v. Grieser, 154 Neb. 685, 48 N. W. 2d 753, the following appears: "Jurisdiction of the court in matters relating to divorce and alimony is given by

the statute and every power exercised by the court with reference thereto must look for its source in the statute or it does not exist.

"Courts of general jurisdiction have the inherent power to do all things necessary for the proper administration of justice and equity within the scope of their jurisdiction."

The matter of the trial of the question of paternity, it is believed, comes within the purview of this declaration of the powers of courts of equity. If it does not it becomes clearly apparent that in an instance such as this the court is barred from a complete exercise of the power specifically granted to it by section 42-311, R. R. S. 1943. Accordingly the holding is that the district court had and properly exercised the power to try and determine the question of whether or not the defendant was the father of the child of plaintiff.

The question to be considered next is that of whether or not there was satisfactory and sufficient evidence to sustain the finding made by the court.

Section 13-109, R. R. S. 1943, defines what may be regarded as satisfactory proof in an action instituted agreeable to the provisions of sections 13-106 and 13-113, R. R. S. 1943, as follows: "A person may state in writing that he is the father of a child or perform acts, such as furnishing of support, which reasonably indicate that he considers himself to be the father of such child, and in such case he shall be considered to have acknowledged the paternity of such child."

No reason is apparent why this quality of evidence should be regarded as insufficient in this case.

On the question of whether or not the evidence was satisfactory or, in other words, whether or not it was sufficient in probative value to sustain the finding that the defendant had acknowledged the paternity of the child, it is pointed out that he testified that he had executed an instrument designating the child as a beneficiary of an insurance policy. This evidence was ob-

jected to at the time but since no motion for new trial was filed the propriety of its admission is not before the court.

The controlling principles in situations such as this are stated as follows in Nemetz v. Nemetz, 147 Neb. 187, 22 N. W. 2d 619:

"In an equity case appealed to this court, if it is desired to review alleged erroneous rulings of the trial court as to the reception of evidence, a motion for a new trial must be filed and overruled in the district court.

"In an equity action where the district court receives evidence over objection and a motion for a new trial is not made and the evidence is here preserved in the bill of exceptions, this court upon trial de novo will consider it and give it whatever probative value it may have in reaching a conclusion upon the fact issues involved." See, also, Rush v. Heinisch, 157 Neb. 545, 60 N. W. 2d 608.

However there was other evidence which was of probative value and of the quality described in section 13-109, R. R. S. 1943. The plaintiff gave testimony, which came within the purview of the section, that the defendant supported and treated the child as his own from the date of his birth, which was September 10, 1954, until April 10 or 20, 1955, when the parties separated; that he has not denied that he is the father; that in the presence of friends, neighbors, and his mother his attitude was that of father; that he came regularly to visit the child and brought gifts; that he has paid some doctor and hospital bills; and that on one occasion he was heard to say to an associate in a business venture: "We have to take our little boy to Grand Island to the doctor."

The plaintiff gave other testimony not within the purview of section 13-109, R. R. S. 1943, that she had gone with plaintiff 2 years before she became pregnant and that she had no access to any other man during that time.

This evidence was sufficient to sustain the finding of the district court that the child in question was a child

of the parties to this action. In the light of this and the analysis of the law which has been made it is concluded that the district court had the power to bind the defendant by an order for the care, custody, and maintenance of this child.

As has been pointed out the court, in this case as an action for divorce, made an allowance for temporary support for the child. The award was for $100 a month payable in installments of $50 each. This order was made as of July 6, 1955. On final disposition of the case the defendant was ordered to make payments of $150 a month until the further order of the court, the first to be paid on May 11, 1956, and the further payments to be made on the 11th day of each succeeding month. An attorney's fee in the amount of $150 was allowed. The defendant was also ordered to pay the difference between the total amount due to the time of the final disposition of the case and the amount which had been paid.

On the award for temporary allowances the record discloses that the defendant had paid $810. This would account for 8 months, or through February 1956, and $10 for March.

The defendant insists that he should not be required to pay the balance on the temporary allowance and that he should not be required to pay the attorney's fee.

As to the question of delinquent allowances it appears that it was proper to require that delinquent allowances should be paid to May 11, 1956. Prior to this date the action was one for divorce but on this date it was judicially determined that there was no valid marriage. The effect of this was to leave the defendant without any binding legal obligation to support the child, since it had not been determined that the defendant was the father of the child.

The allowance of the attorney's fee was clearly erroneous. The right of the court to allow an attorney's fee in an action for divorce is dependent upon the existence

of the marriage relation, and in a case where it is found that the relation does not exist a fee may not be allowed.

In Abramson v. Abramson, 161 Neb. 782, 74 N. W. 2d 919, it was said: "An allowance for counsel fees and suit money is, like an award of alimony, dependent upon the existence of the marriage relation; and if it is denied and the wife fails to refute such denial, her application must be refused owing to her failure to make out a prima facie case."

As to the right of the court in general to allow attorney's fees this court said in State ex rel. Ebke v. Board of Educational Lands & Funds, 159 Neb. 79, 65 N. W. 2d 392: "It is the practice in this state to allow the re- covery of attorney's fees and expenses only in such cases as are provided for by statute, or where the uniform course of procedure has been to allow such recovery." See, also, Abramson v. Abramson, *supra*. Attorney's fees in a situation such as this are not allowable under any statute and attention has not been called to any course of procedure under which such an allowance may be made.

As has been made apparent the conclusion has been reached that the district court had the power to make an award for the care, custody, and maintenance of the child. It is concluded however that the evidence is insufficient to sustain the award in the amount rendered. It is apparent that the condition of the child requires more for care and maintenance than would be required for a normal child but the burden imposed should not exceed reasonably proved present and current needs or the probable ability of the defendant to pay.

The evidence in both of these areas is limited and indefinite. The condition of the child has been described and some evidence appears as to what will be necessary to be done to habilitate him. The occupations of the defendant have been designated but no measure of his income has been disclosed. There is nothing to indicate that his income is high or regular.

It appears therefore that the monthly award should be $75 a month instead of $150 a month, payable in monthly installments as is provided in the journal entry of the district court.

The judgment of the district court is affirmed to the extent indicated herein, and reversed also to the extent indicated and the cause is remanded with directions to render a decree accordingly.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.

CHAPPELL, J., participating on briefs.