ALEXANDER KENDALL & another *vs.* STANLEY M. BOLSTER & others.

Suffolk. March 30, 1921. — June 2, 1921.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Soldiers' and Sailors' Civil Relief Act. Mortgage,* Of real estate: foreclosure. *Pledge.*

Default having been made in the provisions of a second mortgage upon real estate before the approval of the soldiers' and sailors' civil relief act, 40 U. S. Sts. at Large, 440, 449, a new second mortgage was negotiated with another person as mortgagee, which, although dated before, was not delivered until after that statute went into effect, and as part of the transaction the old second mortgage was not discharged but was assigned to the new second mortgagee, the new second mortgage reciting that the old mortgage so assigned was to be held by the new second mortgagee as "additional security for the amount secured hereby." Upon a breach occurring of the new second mortgage, the holder made an entry to foreclose it and at the same time gave notice by publication of a sale under the power of sale in the original second mortgage, a sale was held and the property was sold. In a suit to have the sale declared void as in violation of the soldiers' and sailors' civil relief act, it was *held*, that, by § 302 (1) of the statute, its provisions did not apply to the foreclosure sale, that sale being to enforce the debt represented by the new second mortgage note, which did not originate until after the act went into effect.

BILL IN EQUITY, filed in the Superior Court on June 30, 1920, by one alleging himself to be a shareholder in the Public Garden Apartment Trust, trustees of which held the legal title to the property numbered 67–69 Beacon Street and 10 Charles Street in Boston, seeking to have declared void a foreclosure of a second mortgage on those premises on the ground that it was in violation

of the soldiers' and sailors' civil relief act, 40 U. S. Sts. at Large, 440, 449. At the plaintiff's request the surviving trustee of the trust was joined with him as a party plaintiff.

In the Superior Court, the suit was referred to a master. Material findings of the master are described in the opinion. The suit then was heard by *Sanderson,* J., upon a motion of the plaintiffs that a decree be entered declaring the foreclosure sale referred to in the bill of complaint to have been invalid and recommitting the case to the master to take an account of the rents and other income received by the defendants or any of them from the premises in question, and upon a motion of the defendants that the report be confirmed; and by his order there were entered interlocutory decrees denying the plaintiffs' motion and confirming the report and a final decree dismissing the bill. The plaintiffs appealed.

*R. G. Dodge, (H. S. Davis* with him,) for the plaintiffs.

*C. Hunneman,* for the defendants Bolster and others.

*J. Noble,* for the Suffolk Savings Bank for Seamen and Others.

*H. Williams, Jr., (D. J. Donahue* with him,) for the Metropolitan Trust Company.

CROSBY, J. This is a bill brought for relief from the foreclosure of a mortgage alleged to be in violation of U. S. St. 1918, c. 20 (40 U. S. Sts. at Large, 440, 449), known as the soldiers' and sailors' civil relief act, which was approved on March 8, 1918. The material parts of the act are as follows:

" Sec. 302. (1) That the provisions of this section shall apply only to obligations originating prior to the date of approval of this act and secured by mortgage, trust deed, or other security in the nature of a mortgage upon real or personal property owned by a person in military service at the commencement of the period of the military service and still so owned by him.

" (2) In any proceeding commenced in any court during the period of military service to enforce such obligation arising out of nonpayment of any sum thereunder due or out of any other breach of the terms thereof occurring prior to or during the period of such service, the court may, after hearing, in its discretion, on its own motion, and shall, on application to it by such person in military service or some person on his behalf, unless in the opinion of the court the ability of the defendant to comply with

the terms of the obligation is not materially affected by reason of his military service —

" (a) Stay the proceedings as provided in this act; or

" (b) Make such other disposition of the case as may be equitable to conserve the interests of all parties.

" (3) No sale under a power of sale or under a judgment entered upon warrant of attorney to confess judgment contained in any such obligation shall be valid if made during the period of military service or within three months thereafter, unless upon an order of sale previously granted by the court and a return thereto made and approved by the court."

The case was referred to a master and is before this court on appeal from an interlocutory decree denying the plaintiffs' motion to recommit the report and from a final decree dismissing the bill.

The following facts were found by the master; most of them are undisputed:

On January 19, 1917, Matthew Hale and the plaintiff Kendall became trustees of an apartment building in course of erection on the corner of Beacon Street and Charles Street, in Boston, under a declaration of trust entitled " Beacon Street Apartment Trust;" the name was afterwards changed to " Public Garden Apartment Trust." On the same date a first mortgage on the real estate was given to the Bankers Mortgage Company for $275,000, a second mortgage to the Commonwealth Trust Company for $60,000, and a third mortgage to the Evatt Construction Company. The plaintiff Kendall resigned as trustee on September 26, 1917, and the plaintiff Oveson was appointed as his successor. On March 5, 1918, Hale resigned leaving Oveson as sole trustee.

The plaintiff Kendall entered the military service of the United States on May 7, 1917, and there remained until he was discharged on July 1, 1919. On September 4, 1917, a certificate for thirty shares in the Public Garden Apartment Trust was issued to him. Before the issuance of this certificate he was not the legal owner of any shares in the trust, but he contends that before his entry into the service, an oral agreement was made by him with Hale as trustee, by which he became entitled in equity to these thirty shares; that he was the equitable owner of them; and that the issuance of the certificate having been made in accordance with

the agreement merely converted his equitable title into a legal title.

The debt secured by the second mortgage held by the Commonwealth Trust Company was payable in one year after date with interest payable semiannually; the principal not having been paid a new mortgage was negotiated with the defendant the Metropolitan Trust Company, in the same amount, dated March 7, 1918, payable as follows: $1,500 on April 6, 1918; $1,500 on May 6, 1918, and $1,000 on the sixth day of each month thereafter to and including February 6, 1921, and the entire unpaid balance on March 6, 1921, with interest at six per cent per annum, payable monthly. This mortgage was given subject to the first mortgage held by the Bankers Mortgage Company, on which $253,110 was due as principal on April 13, 1918. This new second mortgage and the note which it secured although dated March 7, 1918 (one day before the approval of the relief act), were not actually delivered to the Metropolitan Trust Company, and the money paid, until April 13, 1918; and on that date the amount due the Commonwealth Trust Company, namely $1,500 (payable on April 6, 1918, according to the terms of the mortgage) was indorsed on the note as paid.

By assignment dated March 7, 1918, but not delivered nor recorded until April 13, 1918, the Commonwealth Trust Company assigned its second mortgage to the Metropolitan Trust Company; this was the mortgage subsequently foreclosed. In the new second mortgage it was recited that the mortgage above referred to given to the Commonwealth Trust Company had been assigned to the Metropolitan Trust Company and was to be held as " additional security for the amount secured hereby." Thereafter the overdue second mortgage was held as additional security for the payment of $58,500, which was also secured by the new second mortgage as therein provided. On April 13, 1918, the old third mortgage held by the Evatt Construction Company was discharged and a new third mortgage was executed to that company.

The instalment of principal of $1,500 payable to the Metropolitan Trust Company on May 6, 1918, was not paid, and on May 9, 1918, the company made an entry to foreclose its mortgage for breach of condition, such breach being the failure of the trustees to pay the instalment of principal due and the taxes; simultaneously

with this entry the company gave notice by publication of a sale under the power of sale contained in the mortgage originally given to the Commonwealth Trust Company, and the property was sold to one Sheerin, and afterwards conveyed to the defendants Bolster, Evatt and Keasbey.

No question is raised respecting the validity of the foreclosure sale except so far as it may be affected by the provisions of the soldiers' and sailors' civil relief act, previously referred to. The declared aim of the act was as follows: " That for the purpose of enabling the United States the more successfully to prosecute and carry on the war in which it is at present engaged, protection is hereby extended to persons in military service of the United States in order to prevent prejudice or injury to their civil rights during their term of service and to enable them to devote their entire energy to the military needs of the Nation, and to this end the following provisions are made for the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in such service during the continuance of the present war." 40 U. S. Sts. at Large, 440, § 100. If we assume, without deciding, that the plaintiff Kendall was an " owner " or entitled to the rights of an owner under § 302 (1), *Hoffman* v. *Charlestown Five Cents Savings Bank*, 231 Mass. 324, *Morse* v. *Stober*, 233 Mass. 223, *John Hancock Mutual Life Ins. Co.* v. *Lester*, 234 Mass. 559, the question remains whether the obligation secured by the mortgage which was foreclosed originated prior to the approval of the act on March 8, 1918.

Although the new second mortgage was dated March 7, 1918, it was not delivered nor the consideration paid until April 13, 1918. It is plain that the obligation secured by this mortgage did not originate prior to the approval of the act. The plaintiffs rely, however, upon the fact that the power of sale actually exercised was the one contained in the mortgage given to the Commonwealth Trust Company; that mortgage being given prior to the date of the approval of the act, the original obligation thereof clearly was within its terms. This mortgage, assigned to the Metropolitan Trust Company, was to be held as " additional security for the amount secured " by the new mortgage. The money raised by the new second mortgage was paid to the Commonwealth Trust Company and the old second mortgage and note were assigned

and delivered to the Metropolitan Trust Company on April 13; and $1,500 was indorsed on the new note on account of that amount being due and unpaid on April 6; thereupon, the old note having been paid, it ceased to have any force or effect as an obligation to pay money, but was assigned, with the accompanying mortgage, only as additional security for the new loan.

Although the old second mortgage was foreclosed, the obligation in default, and on account of which the foreclosure was made, was the new note of the Metropolitan Trust Company which did not originate until April 13, 1918; the default being the failure of the mortgagor to pay $1,500 on the principal due May 6, 1918. The terms of the old and new second mortgages were entirely different, the total amount of the old note being payable in one year from date, while the new debt was payable by instalments of different amounts covering a much longer period. The holder of the new mortgage as such had a double security for its loan, namely, that of the old mortgage which had been assigned to it, and that of the new mortgage.

The act of Congress applies only to the obligation sought to be enforced, which in the case at bar was the debt secured by the new second mortgage, the old mortgage being held merely as additional security for that debt. The real obligation between the trustees and the Metropolitan Trust Company was the debt secured by the new mortgage; until there had been a default in the performance of the condition of that mortgage the trust company would not have had the right to foreclose the old mortgage. The foreclosure in question did not take place until after default of the trustees in the non-payment of the first instalment of principal due May 6, 1918, under the primary or principal mortgage. The fair inference is that the old mortgage was kept alive for the benefit of the Metropolitan Trust Company; it remained as additional security for the amount due under the new note and mortgage. *Davis* v. *Maynard*, 9 Mass. 242. *Watkins* v. *Hill*, 8 Pick. 522. *Pomroy* v. *Rice*, 16 Pick. 22. *Joslyn* v. *Wyman*, 5 Allen, 62. *Cotton* v. *Atlas National Bank*, 145 Mass. 43, 45. *O'Connor* v. *Hurley*, 147 Mass. 145, 150. *Everett* v. *Gately*, 183 Mass. 503. *Jenkins* v. *Andover Theological Seminary*, 205 Mass. 376, 381, 383. *Bon* v. *Graves*, 216 Mass. 440, 443.

For the reasons stated, we are of opinion that the obligation in

the case at bar did not originate prior to March 8, 1918; therefore the foreclosure of the old mortgage was not contrary to the provisions of the act.

The conclusion reached renders it unnecessary to consider the other questions raised and argued at the bar.  The entry must be

*Decree affirmed.*