## DAVID B. CHURCH vs. ELIZA J. BROWN.

Suffolk.    November 13, 1923. — January 4, 1924.

Present: RUGG, C.J., CROSBY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice*, Appeal, Findings by master. *Soldiers' and Sailors' Civil Relief Act. Equity Jurisdiction*, Accounting, Plaintiff's clean hands.

In the midst of the hearing of a suit in equity by a judge of the Superior Court, the hearing was suspended and the suit was referred to a master under a rule directing him " to hear the parties and their evidence and report his findings to the court together with such facts and questions of law as either party may request." The evidence before the judge was taken by a commissioner appointed under Equity Rule 35. The master reported no evidence. Upon an appeal by the plaintiff from an interlocutory decree confirming the master's report and a final decree dismissing the bill, it was *held*, that

(1) The report of the evidence before the judge was not properly a part of the record;

(2) The evidence before the master not being reported, his findings of fact were conclusive;

(3) It was open to the plaintiff to contend that, on the facts found by the master, he was entitled to a decree.

A soldier in the World War, who had a right of redemption under a mortgage of real estate, the conditions of which had been broken, was notified of proceedings for the foreclosure of the mortgage which were begun on or about November 30, 1918, and he procured several postponements of the sale upon a promise to pay a certain amount of money and his agreement that he would make no objection to the sale if such payments were not made. He received his discharge from military service on December 17, 1918. His promises which had led to the postponement of the sale not having been kept by him, the property was sold at foreclosure sale on January 15, 1919. *Held*, that in the circumstances the provisions of the soldiers' and sailors' civil relief act, U. S. St. 1918, c. 20, § 302, cl. 3, did not prevent the foreclosure sale nor make it invalid.

From findings of a master who heard a suit in equity by a man against a woman for an accounting as to certain profits realized from joint operations in real estate alleged to have been withheld by the defendant, it appeared that the plaintiff induced the defendant to engage in the joint enterprise through misrepresentations and fraud and practised fraud and deception upon the defendant in various ways, that he paid nothing toward the purchase price of the real estate which was the subject of the operations, nor did he repay any part of sums advanced by the defendant to carry on the operations, and that the defendant relied on the plaintiff's statements, trusting him implicitly and believing that he would faithfully carry on the enterprise.

*Held*, that the false representations, fraud and deception practised by the plaintiff upon the defendant were necessarily related to the matter for which the plaintiff sought relief and were a bar to the maintenance of the bill.

BILL IN EQUITY, filed in the Superior Court on July 12, 1923, for an accounting relating to certain operations in real estate undertaken by the plaintiff and the defendant jointly. The material allegations of the bill are described in the opinion.

In the Superior Court, the case was partially heard by *Lawton*, J., a commissioner having been appointed under Equity Rule 35 to take the evidence. The evidence so taken covers thirty pages of the printed record. In the midst of the hearing, it was suspended and the suit was referred to a master " to hear the parties and their evidence and report his findings to the court together with such facts and questions of law as either party may request." No evidence was reported by the master. The plaintiff filed ten exceptions to the master's report, all relating to findings of fact by the master, alleged to have been erroneous, or to the failure of the master to make reference to certain evidence. The exceptions were heard by *Sisk*, J., by whose order there were entered an interlocutory decree overruling the exceptions and confirming the report and a final decree dismissing the bill with costs. The plaintiff appealed.

*H. A. Murphy*, for the defendant.

*H. E. Dennison*, for the plaintiff.

CROSBY, J. This is a bill for an accounting. The case was partially heard by a judge of the Superior Court and, before the hearing was completed, referred by him to a master, who has filed a report. The evidence taken before the judge and found on pages 8 to 38, both inclusive, of the record is not properly a part of the record and should not have been embodied therein. As the evidence before the master is not reported, his findings are conclusive. An interlocutory decree has been entered confirming the report and overruling the plaintiff's exceptions; and a final decree has been entered dismissing the bill. No exhibits are referred to in the report or made a part of the record.

The bill alleges that the parties entered into a joint enter-

prise in equal shares to purchase, and in pursuance thereof did purchase, certain real estate for $30,000 and certain adjustments, and paid for the same by giving a mortgage to the Randolph Savings Bank for $24,000 and the balance in cash; that by agreement between the parties the cash was raised by a second mortgage of $4,000 and that the defendant contributed toward the balance $2,358.25 and that the plaintiff contributed thereto $1,293.85; that out of the rents which were to be collected by the defendant she received $532.20, thereby reducing her contribution to equal that of the plaintiff; that it was agreed that after payment of the $532.20 to the defendant, all net profits were to be divided equally between the parties; that the plaintiff was in the military service of the United States from September, 1917, until December 20, 1918. The bill further alleges in substance that the defendant, with the intention of cheating the plaintiff while in the military service, secretly purchased the second mortgage and note, caused the same to be assigned to a relative for the purpose of concealment, caused the mortgage to be foreclosed in the name of the relative, and sold to her under the power of sale, and that later the relative conveyed the property to the defendant. The bill also alleges that the defendant has entered into an agreement to sell the property for $32,500 in cash. The bill seeks an accounting for the proceeds of the sale and for income from the property received by the defendant.

The master found that in September, 1917, the plaintiff was a real estate broker; that during that month he first met the defendant; that she told him she desired to find some investments; that he had several talks with her respecting the property above referred to and finally told her it could be purchased for $30,000, although he had previously stated to her that a much larger price was asked; that it was agreed they would buy the property on equal shares and share equally in the profits at the price of $30,000, it being stated by the plaintiff that the bank would take first mortgage of $24,000, a second mortgage could be secured of $4,000, and that the balance of the purchase price, together with certain adjustments, was to be paid in cash equally by the parties.

The master also found that the plaintiff, when he made the agreement with the defendant, knew that the property could be bought for $28,000; that he secured an agreement from the bank to sell for that price and caused the agreement to be made to one Libby, his brother-in-law and office associate; that the plaintiff did not tell the defendant that Libby was to be a party to the transaction, but led her to believe that it was to be purchased directly from the bank for $30,000, and that the defendant relied upon the state-ments of the plaintiff and believed that he was acting in good faith in his representations to her; that as a part of the same transaction Libby, at the direction of the plaintiff, conveyed the property to Eliza J. Montgomery, mother of the defend-ant, and to the plaintiff as tenants in common of an un-divided one half interest subject to the two mortgages; that Mrs. Montgomery soon after conveyed her interest to the defendant for whose benefit she held it; that at the time of the transaction it appeared that certain deductions were made out of the amount realized on the second mortgage and that there was not sufficient money to pay the bank the full price as represented by the plaintiff and the defendant was obliged to pay the bank such balance; that she also paid certain adjustments due the bank, and certain other expenses which the plaintiff had told her were to come out of the purchase price.

The master further found that the defendant paid in cash at the direction of the plaintiff, on account of the purchase price, expenses and adjustments, the sum of $2,358.25 and that the plaintiff paid nothing on account of such price, expenses or mortgages; that the plaintiff told the defendant that he would not claim a commission but would pay one half of the amount required above the mortgages.

It also appears that shortly before the plaintiff entered the military service, he conveyed his interest in the property to Jane C. Youatt, his wife's sister, to hold the same for the benefit of his wife and also to protect it from certain creditors; that at the same time Miss Youatt executed a deed of the property to him which was not recorded until just before his discharge on December 17, 1918.

The master also found that about October 15, 1918, the defendant procured an assignment of the second mortgage to her niece, Mabel F. Robbins, who held it for the benefit of the defendant, and that the latter paid the consideration amounting to $2,800; that the reason the defendant purchased and caused to be held for her benefit the second mortgage was that the mortgagee required the payment of twelve per cent for an extension, and also required the defendant to pay the cash advanced for the plaintiff's benefit on account of the purchase of the property. The second mortgage was not paid at maturity and on or about November 30, 1918, the defendant commenced foreclosure proceedings. Notice of the sale was given to Miss Youatt and to the plaintiff. The latter secured several postponements of the sale upon the promise to pay his share of the deficit in the purchase price and carrying charges and agreed that he would make no objection to the sale if such payments were not made.

The master found that the plaintiff failed to pay or offered to pay anything upon his share of the purchase price and deficit, although he had full knowledge of the same and that the defendant was in possession of the property and was endeavoring to sell it; and that the sale was made January 15, 1919, and title was taken by the defendant; thereafter, on or about July 12, 1920, she sold the property to one Rowe for $32,500.

The master has stated in detail the account between the parties and found that the total amount for which the defendant is accountable if the bill can be maintained is $2,908.33; and that if the plaintiff is not precluded as matter of law from recovery he is entitled to receive one half of that sum.

The contention of the plaintiff that the foreclosure sale under the second mortgage, made within three months after the period of his military service expired, is invalid, cannot be sustained. The provisions of the soldiers' and sailors' civil relief act, U. S. St. 1918, c. 20, § 302, cl. 3, did not prevent nor make invalid such a sale when, as the master found, the plaintiff knew of it and made no objection thereto. It is a necessary inference from the finding that he expressly assented to it.

Nearly all of the exceptions are based upon the contention that the master's findings are unwarranted by the evidence, but as it is not reported, they must stand. It follows that the interlocutory decree overruling the exceptions was properly entered.

On the appeal from the final decree, it is open to the plaintiff to argue from the facts found by the master that the defendant is not entitled to prevail. *French* v. *Peters*, 177 Mass. 568. *Lyons* v. *Elston*, 211 Mass. 478. *Fay* v. *Corbett*, 233 Mass. 403, 410.

It is plain from the findings of the master that the plaintiff induced the defendant to enter into the agreement for the purchase of the property by reason of his misrepresentations and fraud, not only with reference to the purchase price, but in connection with other matters relating to the transaction; that he paid nothing toward the purchase price of the property, nor did he pay any part of the money advanced by the defendant to carry it; and it is a rational inference from the findings that he never intended to make any of said payments in accordance with his agreement.

The finding that the defendant relied on the plaintiff's statements and believed that he was acting in good faith in his representations to her, together with the findings of fraud and deception practised by the plaintiff, preclude him from maintaining the bill. He stood in a relation of trust and confidence to the defendant. She apparently trusted him implicitly and believed that he would faithfully carry out the enterprise in which they had mutually agreed to engage, and would not violate the fiduciary obligations which he owed to her for his own profit and advantage to her detriment. A party who seeks relief in equity must be free from unconscionable conduct on his own part. The salutary rule of law that one who seeks the aid of a court of equity must come with clean hands is applicable to the case at bar. The false representations and deception practised upon the defendant, being necessarily related to the matter for which the plaintiff seeks relief, are a bar to the maintenance of the bill. *Lawton* v. *Estes*, 167 Mass. 181. *Sawyer* v. *Cook*, 188 Mass. 163, 169. *Downey* v. *Charles S. Gove Co.* 201

Mass. 251.  *Wilson* v. *Jackson,* 204 Mass. 432, 446. *Hawkes* v. *Lackey,* 207 Mass. 424, 432, 433.  *Verne* v. *Shute,* 232 Mass. 397. *Manufacturers National Bank* v. *Simon Manuf. Co.* 233 Mass. 85.  *Howe* v. *Chmielinski,* 237 Mass. 532.

*Decree affirmed.*